UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                            :
UNITED STATES OF AMERICA    :    S2 23 Cr. 578 (JGK)
                                            :
    -against-                           :
                                            :
CARLOS MERCADO                :
                                            :
_____:


# DEFENSE SENTENCING SUBMISSION


**Matthew J. Kluger, Esq.**
**888 Grand Concourse, 1H**
**Bronx, New York  10451**
**(718) 293-4900**

MATTHEW J. KLUGER, ATTORNEY AT LAW
888 GRAND CONCOURSE, SUITE 1H
BRONX, NEW YORK 10451

February 19, 2026

Honorable John G. Koeltl
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

    Re:    <u>United States v. Carlos Mercado</u>
           **S2 23 Cr. 578 (JGK)**

Dear Judge Koeltl:

This letter is respectfully submitted on behalf of defendant Carlos Mercado in advance of his sentencing scheduled for **March 4, 2026, at 11:30 a.m.**  On October 21, 2025, Mr. Mercado appeared before your Honor and, in accordance with a written plea agreement, pled guilty to Counts Two and Three of the above-referenced Superseding Indictment charging him with Conspiracy to Commit Theft of a Postal Key and Conspiracy to Commit Mail Theft and Receipt of Stolen Money respectively.

This submission is provided to assist the Court in determining a sentence which is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  As noted by the Supreme Court, "[h]ighly relevant - if not essential - to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." <u>Williams v. New York</u>, 337 U.S. 241, 246-247, 69 S. Ct. 1079 (1949). This "ensures that the punishment will suit not merely the offense *but the individual defendant as well*." <u>Wasman v. United States</u>, 468 U.S. 559, 564, 104 S. Ct. 3217 (1984)(emphasis added). (<u>See</u> <u>also</u> <u>Pepper v. United States</u>, 131 S. Ct. 1229 (Sotomayor, J.)).

While this submission seeks to provide context and mitigation, it is not intended to dispute, change, or challenge any provision of the plea agreement.  Similarly, Mr. Mercado has accepted and acknowledged full responsibility for his actions and nothing presented herein is intended to justify or excuse his conduct in any way.

### Defense Sentencing Recommendation

The plea agreement stipulates that at a total offense level of 23 in criminal history category I, the applicable Sentencing Guidelines range of imprisonment is 46 to 57 months. After doing its own investigation and calculations, Probation reached the same result. After considering all of the §3553(a) factors, including Mercado's lack of criminal

2

history, familial responsibility, challenging childhood, mental health concerns, and brief involvement in the instant offense in a limited, minor, role, Probation recommends a below-guidelines sentence of 36 months' imprisonment, followed by three years of supervised release. (See PSR *Sentencing Recommendation*, p. 30).

Mr. Mercado appreciates the seriousness of his offense and accepts full responsibility for his conduct. Mercado was arrested for the instant offense on July 10, 2023, and released on bail conditions. However, after failing to remain arrest-free while on bail, Mercado was remanded, on consent, on June 20, 2024.[1]

This case presents a 22-year-old first-time offender with documented mental health challenges, a history of family instability, a minor role in a broader conspiracy, and significant rehabilitative efforts while in custody. The advisory range is driven primarily by loss amount and enhancements that, while mechanically correct, substantially increase the sentencing exposure beyond what is necessary to achieve the purposes of §3553(a).

Accordingly, after careful consideration of the factors set forth in 18 U.S.C. § 3553(a), the defense respectfully submits that a sentence of **24 months' imprisonment,** followed by three years of supervised release, is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

## Sentencing After *United States v. Booker*

As this Court is undoubtedly aware, the Supreme Court's decision in United States v. Booker substantially altered a court's obligation with respect to sentencing. The Sentencing Guidelines are of course no longer mandatory and while still important and instructive, they remain just one of several factors set forth in 18 U.S.C. § 3553(a) which a sentencing court must consider in determining a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that these purposes are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range

---

[1] By the time of sentencing, Mr. Mercado will have served nearly twenty-one months in federal custody, which, with anticipated good-time credit, approaches twenty-two months of credit toward a custodial sentence.

3

established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

## Application of §3553(a) Factors

### 1. §3553(a)(1): History and Characteristics

A. *Childhood and Family Instability*

Carlos Alberto Mercado, age 22, was born and raised in Bridgeport, Connecticut. His childhood was marked by instability, domestic violence, and chronic financial hardship. His father, Raymond Mercado, Sr. was an alcoholic and physically abusive toward his mother. When Mercado was five years old, his father was incarcerated for a serious domestic violence offense resulting in a five-year prison sentence. (PSR ¶82). His father's incarceration did not resolve the instability; it compounded it, leaving the family financially strained and emotionally fractured.

From a young age, Mr. Mercado was exposed to conflict and insecurity inside his own home. The absence of a stable father figure, combined with economic stress, required him to mature quickly. His mother, Joanne Morales, struggled not only with the emotional aftermath of abuse but also with deteriorating physical health. She suffers from lupus and has experienced multiple strokes, leaving her with significant mobility limitations and long-term medical needs.

As his mother's health declined, Mr. Mercado assumed responsibilities that far exceeded those typical of a teenager. He assisted with her daily care, transportation to medical appointments, and basic household needs. He also contributed financially when he was able. By age 17, he left school in order to work and help support the household. That decision — while pragmatic — curtailed his educational development and narrowed his long-term employment prospects. Prior to his remand, Mercado served as his mother's caretaker. (PSR ¶76).

Mr. Mercado has never been married and has no children. He has one older brother, Raymond Mercado, Jr., age 24. Growing up, Mercado recalled Raymond drinking excessively as well as smoking marijuana and consuming pills. Household items often went missing, which Mercado suspects had been stolen by his bother to finance his drug use. (PSR ¶81). Raymond Mercado is currently serving a five-year sentence in Connecticut for possession of a firearm.

B. *Mental and Emotional Health*

Mr. Mercado's psychological and developmental history reflects longstanding mental health issues that predate the instant offense.

4

The Presentence Investigation Report documents that at around age 10, Mercado was diagnosed with Attention-Deficit/Hyperactivity Disorder (ADHD) and was prescribed medication and received counseling services during his early years. ADHD is a neurodevelopmental condition associated with impaired impulse control, difficulty with executive functioning, and increased susceptibility to peer influence — traits that are particularly pronounced during adolescence and early adulthood. (PSR ¶¶ 94-96).

Although he received treatment as a child, Mr. Mercado discontinued both medication and counseling during his teenage years. Thereafter, he navigated adolescence without consistent mental-health support despite growing exposure to stress, instability, and trauma. (*Id.*)

When Mercado was 18, he witnessed a close friend get shot and killed right in front of him — an event that understandably had a profound emotional impact. He reported ongoing anxiety and hypervigilance following that incident. Although he has not received a formal PTSD diagnosis, the symptoms he reports are consistent with trauma-related stress. (PSR ¶98).

The convergence of untreated ADHD, exposure to violence, and chronic environmental stressors is highly relevant in assessing Mercado's conduct at age 20. Individuals with executive functioning deficits are more prone to impulsive decision-making, difficulty anticipating long-term consequences, and poor judgment under stress. That dynamic is particularly relevant to the events of July 10, 2023, when Mr. Mercado made the reckless decision to flee from law enforcement — a panicked and dangerous response that he now deeply regrets.

Recognizing these concerns, the defense sought and obtained authorization from the Court to retain Dr. Jason Krellman, a board-certified clinical neuropsychologist and Associate Professor at Columbia University Irving Medical Center, to conduct a comprehensive neuropsychological evaluation. Dr. Krellman specializes in complex neurocognitive evaluations involving developmental disorders and trauma exposure. His evaluation is intended to assess executive functioning, impulse control, trauma-related symptomology, and the degree to which neurodevelopmental factors contributed to Mr. Mercado's behavior.[2]

Importantly, this mitigation is not offered to excuse Mr. Mercado's conduct. He accepts responsibility for his actions. Rather, it is offered to provide context — to assist the Court in understanding how youth, untreated neurodevelopmental conditions, and trauma exposure intersected during a period of immaturity. Those factors bear directly on culpability, deterrence, and the likelihood of rehabilitation.

An equally important purpose of sentencing is to "provide the defendant with needed . . . medical care . . . in the most effective manner." See §3553(a)(2)(D). The defense hopes that Dr. Krellman's report will serve as a treatment roadmap not only during his term of supervised release, but for any future mental health provider as well. At 22 years old, Mr.

---

[2] Dr. Krellman's report will be provided to the Court under separate cover prior to sentencing.

5

Mercado remains at an age where neurocognitive development is ongoing. With appropriate structure, supervision, and mental-health treatment, his prognosis for rehabilitation is strong.

C. *Educational and Employment History*

Given the mental health challenges, familial instability, and trauma Mr. Mercado experienced during his youth, it is notable that his educational and employment history reflects a pattern of responsibility rather than delinquency. That history also speaks to his capacity for rehabilitation and future success.

Although Mr. Mercado left high school midway through his senior year at age 17, he did so in order to care for his mother and contribute financially to the household. (PSR ¶ 105). His decision, while limiting his long-term academic opportunities, was driven by economic necessity and the need to support his ailing mother — not by indifference toward education.

Indeed, Mercado's conduct while incarcerated reinforces that point. According to the Bureau of Prisons records cited in the PSR, Mr. Mercado has completed a 40-hour pretrial math course (September 2024), a 16-hour "Start Now – ACE" course (June 2025), a 12-hour time management course (July 2025), and a 12-hour "Start Now – Unit Two" course (September 2025). He has also completed substantial portions of the GED examination between April and July 2025, earning scores of 139 in Math, 146 in Reading/Language Arts, 149 in science, and 148 in Social Studies. (PSR ¶ 109).

These efforts reflect discipline, initiative, and a genuine commitment to completing the education he was forced to abandon as a teenager.

With respect to employment, following his departure from school, Mr. Mercado remained consistently employed — at times working multiple jobs simultaneously — up until his remand. Since the age of 17, he has held steady positions at ShopRite and Big Y supermarkets as a cashier, at Synchrony Financial as a security guard, and at Jersey Mike's Subs and Chipotle Mexican Grill. (PSR ¶¶ 111–114). These were not brief or sporadic engagements, but part of a sustained pattern of lawful work.

Most notably, from April 2022 until his remand on June 20, 2024, Mr. Mercado was employed through an agency that provides supportive in-home services and was formally approved to serve as the caregiver for his mother. (PSR ¶ 110). In that role, he assisted with daily living activities and medical needs, providing consistent care to a parent suffering from serious health conditions.

This record reflects responsibility and a willingness to shoulder adult obligations at a young age. Rather than a pattern of delinquency, it reflects a young man who contributed financially and practically to his household from adolescence onward. While his involvement in this offense represents a serious deviation from lawful conduct, it does not define his overall trajectory.

Once he is able to do so, Mr. Mercado has expressed his intention to pursue a college education and ultimately become a registered nurse — a goal that reflects maturity and a desire to build a stable, lawful future. (PSR ¶108).

**2. §3553(a)(1): Nature and Circumstances of the Offense**

Between January 2022 and July 2024, Mr. Mercado participated in a conspiracy involving the theft of checks from United States Postal Service collection boxes using unlawfully obtained USPS "arrow keys." The stolen checks were altered or sold and ultimately deposited into fraudulent bank accounts. Mr. Mercado's role was limited to serving as a driver at the direction of more senior members of the conspiracy.

On July 10, 2023, Mr. Mercado and a co-defendant were observed stealing mail from a collection box in Manhattan. When law enforcement attempted to apprehend them, Mr. Mercado fled in the vehicle. In the course of fleeing, he drove in the direction of an officer, who was able to move out of the way, and then proceeded the wrong way on a one-way street, colliding with a livery vehicle and injuring the driver. Mr. Mercado does not minimize the seriousness of this conduct. His decision to flee was reckless and dangerous, and he accepts responsibility for the risk and harm it caused.

With respect to deterrence, for a first-time offender like Mr. Mercado, the experience of federal prosecution, the substantial restitution and forfeiture obligations, the lasting collateral consequences of a felony conviction, and nearly twenty months in federal custody constitute a significant sanction. Together, these consequences reflect the seriousness of the offense and promote respect for the law without requiring a sentence which is greater than necessary.

**3. Notable Sentencing Guidelines Applicable to this Case**

Although the Guidelines may seek to quantify and punish certain factors and behaviors, they do little to recognize many of the other important aspects of a person's life. Thus, while a strict application of the Guidelines, which attempt to apply an objective set of criteria to a subjective and varied set of facts, may achieve some degree of uniformity, it also fails to take into consideration many of the other factors and circumstances which the sentencing judge is required to consider under Section 3553(a) as well. This is particularly true in the context of fraud offenses.

A. *Adjustment for Loss (U.S.S.G. §2B1.1)*

The principal structural problem with §2B1.1 is its outsized reliance on loss amount as the dominant driver of the advisory range. In economic offenses, the Guidelines almost always hinge on intended loss — a figure that often reflects the theoretical scope of a conspiracy rather than a defendant's personal gain, authority, or decision-making role. The result is that sentencing exposure can escalate dramatically based on aggregate harm untethered from individual culpability. That distortion is evident here.

Here, the intended loss amount is $7,230,337.11, which represents the intended loss amount attributable to the conspiracy as a whole, and reasonably foreseeable to Mr. Mercado, during the time that he was a member. This triggers an **18-level** guidelines enhancement despite the fact that Mr. Mercado did not obtain or possess an arrow key, did not alter or negotiate checks, did not control bank accounts, and did not profit meaningfully from the scheme. Indeed, as Probation notes, Mercado earned only "a few hundred dollars each time he drove one of the other co-defendants around to perpetrate the conspiracy's illegal objectives." (PSR ¶ 43). In other words, the enhancement is driven not by what Mr. Mercado did, but by what the conspiracy as a whole intended.[3]

The defense does not challenge the arithmetic of the loss calculation or the seriousness of the offense. Rather, it respectfully submits that the mechanical application of the loss table produces a range that substantially overstates Mr. Mercado's personal culpability.

Courts within this Circuit have repeatedly recognized that the fraud Guidelines' singular focus on loss can generate advisory ranges that exceed what is necessary to achieve the purposes of sentencing under §3553(a). See, e.g., United States v. Gupta, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012)("By making a Guidelines sentence turn on a single factor, the Sentencing Commission ignored [§3553(a)] and . . . effectively guaranteed that many such sentences would be irrational on their face."); United States v. Anderson, 441 F. Supp. 2d 506, 500 (S.D.N.Y. 2006)("What drove the Government's calculation in this case, more than any other single factor, was the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss."). See also United States v. Ovid, 2010 WL 3940724, (E.D.N.Y. Oct. 1, 2010).

B. *Adjustment for Role in the Offense (U.S.S.G. §3B1.2(b)*

Like the plea agreement, the Presentence Investigation Report concludes that Mr. Mercado was a minor participant in the offense and applies a two-level reduction pursuant to U.S.S.G. §3B1.2(b). (PSR ¶ 59). Mercado was not a planner or organizer, did not control the broader operations of the scheme, and did not exercise supervisory authority over others. His financial benefit was minimal compared to the aggregate losses attributed to the conspiracy.

Here, Mr. Mercado's role was not only minor — it was limited in both scope and duration. In what was a far-reaching mail theft scheme, he primarily acted as an occasional driver for pay during mail theft activity and operated at the direction of others. Just as important is what Mr. Mercado did *not* do. He did not obtain the USPS "arrow key," did not wash, alter, or negotiate stolen checks, and did not steal bank account information, sell stolen checks, or control the flow of funds. His involvement was peripheral, not operational.

---

[3] Even the $176,286.87 in intended loss attributed to the checks taken from the mailbox on the evening of Mr. Mercado's arrest is, in practical terms, theoretical. The checks were recovered by law enforcement at the time of the arrest and were never altered, negotiated, or deposited. Thus, while properly counted as intended loss under the Guidelines, that figure does not reflect realized financial harm. This further illustrates how the loss calculation, though mechanically correct, can materially exceed the actual economic impact of the offense.

In assessing culpability under §3553(a), it is important to distinguish between those who orchestrated and profited from the scheme and those, like Mr. Mercado, who participated at a subordinate level without decision-making authority. A sentence that approaches the advisory range risks overstating his individual culpability and collapsing meaningful distinctions between leaders and minor participants.

C. *Adjustment for Obstruction of Justice (U.S.S.G. §3C1.2)*

Arguably, Mercado's most serious conduct has little to do with the fraud scheme itself. On July 10, 2023, the date that Mercado was arrested, NYPD officers observed Mr. Mercado and a co-defendant near mail collection boxes on Lexington Avenue and East 74th Street in Manhattan engaging in activity consistent with mail theft. The two were seen driving a silver Hyundai Sonata and stopping at a collection box, where the co-defendant exited the vehicle and began removing mail. Officers then activated their emergency lights and positioned their unmarked vehicle to block the Hyundai in order to apprehend the occupants.

When officers identified themselves and ordered the occupants to exit the vehicle, Mr. Mercado did not comply. The vehicle reversed briefly and then accelerated forward, forcing an officer to move out of the way to avoid being hit. The vehicle fled southbound, turned the wrong way onto East 73rd Street, and collided with a livery vehicle, requiring the driver to seek medical attention at a nearby hospital. Mr. Mercado and his co-defendant attempted to flee on foot but were apprehended shortly thereafter by responding officers nearby. Accordingly, the two-level increase under U.S.S.G. §3C1.2 properly applies. (PSR ¶ 60).

Additionally, Mr. Mercado's conduct during the attempted flight materially impacts the Guidelines calculation in more than one way. The two-level enhancement for reckless endangerment during flight increases the offense level, and because the conduct resulted in bodily injury, Mr. Mercado is ineligible for the two-level reduction available to certain zero-point offenders under U.S.S.G. §4C1.1. (PSR ¶65). As a result, the flight conduct has the practical effect of increasing the offense level by four levels in total — a significant adjustment that the Court may properly consider when evaluating whether the advisory range overstates the punishment necessary to achieve the purposes of sentencing.

Accordingly, while the Guidelines are certainly important and must always be considered, they are only one of many factors that the court must consider in determining a sentence which is reasonable and sufficient but no greater than necessary.

## **Exhibits**

Finally, in further support of the defense sentencing request, the following Exhibits are attached for the Court's review and consideration:

- **Exhibit A**:    MDC Certificates

- **Exhibit B**:    Letter to the Court from Carlos Mercado

- **Exhibit C**:    Character Letters

    a. Joanne Morales, Mother
    b. Tatyana Allgood, friend
    c. Ricki Vogues, friend

The attached exhibits reflect both Mr. Mercado's efforts at self-improvement while incarcerated and the strength of his support system upon release.

Since his remand, Mr. Mercado has completed numerous educational and rehabilitative programs at MDC Brooklyn. These include completion of the National Parenting Program (Phase One) (June 26, 2024); a Pre-Trial GED Mathematics Course (September 4, 2024); the Credit Report and Scores course (February 10, 2025); the Leadership & Influence Course (July 30, 2025); a Time Management Course (July 11, 2025); Start Now – Unit 1: My Foundation (June 17, 2025); Start Now – Unit 2: My Emotions (September 11, 2025); and the First Step Act Chapel "Houses of Healing" program (August 11, 2025).

These programs address financial literacy, emotional regulation, leadership, parenting, and reentry readiness — areas directly relevant to the conduct in this case and to his rehabilitation. See Exhibit A.

In his letter to the Court, Mr. Mercado accepts responsibility for his conduct and expresses sincere remorse for the harm he caused. He acknowledges that he made selfish and unhealthy choices and states plainly that he was wrong. He describes using his time at MDC to reflect, pursue his GED, and commit himself to building a lawful future, emphasizing that this will be his first *and last* time in custody. See Exhibit B.

The letters submitted on his behalf further underscore his character and support network. His mother describes a son who assumed adult responsibilities at a young age, served as her caregiver during serious illness, and has struggled with trauma and mental health challenges since childhood. See Exhibit C.

Longtime friends similarly describe him as kind, accountable, and genuinely remorseful, noting his consistent employment history and his stated commitment to education and lawful work upon release. *Id*.

Collectively, the letters reflect not excuse-making, but a recognition that Mr. Mercado made serious mistakes — and a shared belief that he has the capacity and support to return to the community as a productive and law-abiding citizen.

**Sentence Request and Conclusion**

For the reasons set forth above, a sentence within the advisory Guidelines range would be greater than necessary to achieve the purposes of sentencing. Mr. Mercado has accepted full responsibility for his conduct and has taken meaningful steps toward rehabilitation while in custody. A sentence of **24 months' imprisonment**, followed by three years of supervised release, is sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence — without imposing a punishment greater than what is necessary under 18 U.S.C. § 3553(a).

Respectfully submitted,

_____
Matthew J. Kluger
*Attorney for Carlos Mercado*

cc:   AUSA Jerry Fang
      AUSA William Stone
      USPO Pamela C. Flemen